TOM PIERCE, ESQ. 6983
PETER N. MARTIN, ESQ., 9705
Tom Pierce, Attorney at Law, LLLC
P.O. Box 798
Makawao, HI 96768
Telephone: 808-573-2428
Facsimile: 866-776-6645
E-mails: tom@mauilandlaw.com
peter@mauilandlaw.com

CHARLES M. TEBBUTT, *pro hac vice forthcoming*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Telephone: 541-344-3505
Facsimile: 541-344-3516
E-mail: charlie@tebbuttlaw.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| FRIENDS OF MAHA‘ULEPU, INC., a Hawai‘i non-profit corporation, | Case No. _____ |
| Plaintiff, | COMPLAINT; EXHIBIT "A"; SUMMONS |
| v. | |
| HAWAI‘I DAIRY FARMS, LLC, a Delaware Limited Liability Company; ULUPONO INITIATIVE, LLC; a Delaware Limited Liability Company; MAHA‘ULEPU FARM, LLC; a Delaware Limited Liability Company, | |
| Defendants. | |

COMPLAINT                                                                 1

## COMPLAINT FOR DECLARATORY RELIEF, INJUNTIVE RELIEF, AND CIVIL PENALTIES

## INTRODUCTION

1.      This is a citizen suit for declaratory relief, injunctive relief, and civil penalties brought by Plaintiff Friends of Māhāʻulepu, Inc., against Defendants Hawaiʻi Dairy Farms, LLC, Ulupono Initiative, LLC, and Māhāʻulepu Farm, LLC, (hereinafter collectively referred to as "Defendants") for violations of the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1251 *et seq*. (hereinafter "CWA"), at the site of Defendants' proposed commercial dairy facility (hereinafter "Proposed Dairy Site" or "Site") located in the Māhāʻulepu Valley, Kauaʻi.

2.      This civil action is brought pursuant to the citizen suit provision of the CWA, 33 U.S.C. § 1365(a)(1)(A).

3.      Section 301(a) of the CWA provides that "the discharge of any pollutant by any person shall be unlawful," except in accordance with certain statutory requirements of the Act, including the requirement that a discharger obtain and comply with a National Pollutant Discharge Elimination System ("NPDES") permit.  33 U.S.C. § 1311(a); 33 U.S.C. § 1342.

4.      Section 402 of the CWA establishes the NPDES Program, which controls water pollution by regulating point sources and industrial, municipal, and other facilities that discharge to surface waters.  33 U.S.C. § 1342.

COMPLAINT                                                                                    2

1    5.    As detailed below, Plaintiff alleges that Defendants have violated and

2    continue to violate Sections 301 and 402 of the CWA by engaging in construction

3    and construction support activities at the Site which result in the disturbance of

4    land area totaling one acre or more, or which disturb less than one acre of land area

5    as part of a common plan of development, without first obtaining coverage under

6    Hawai'i's "NPDES General Permit Authorizing Discharges of Storm Water

7    Associated with Construction Activities", Hawai'i Administrative Rules ("HAR")

8    § 11-55, Appendix C, or obtaining coverage under an applicable individual

9    stormwater permit.  HAR Ch. 11-55, Appendix C, Section 1.1.

10    6.    Upon information and belief, Defendants' unpermitted construction and

11    construction support activities cause or are reasonably likely to cause discharges of

12    pollutants including, but not limited to, dirt, debris, sewage sludge from land

13    applications, biological materials, rock, sand, or other materials (collectively,

14    hereinafter "Construction Pollutants") into waters of the United States, including,

15    but not limited to, the Wai'opili Stream, the Pacific Ocean, and other springs,

16    streams, irrigation, and drainage canals flowing in and through the Proposed Dairy

17    Site.

18    7.    Plaintiff seeks declaratory relief establishing that Defendants have violated

19    the CWA.  Plaintiff also seeks injunctive relief directing Defendants to halt any

20    and all continuing construction and construction support activities at the Proposed

COMPLAINT                                                                                        3

1    Dairy Site.  Additionally, Plaintiff seeks an award of civil penalties in the amount

2    of $37,500 per violation, per day.  Finally, Plaintiff requests that the Court award

3    Plaintiff's reasonable attorneys' and expert witness fees and costs incurred in

4    bringing this action and any other relief that this Court deems appropriate.

5                 **JURISDICTION**

6    8.     This is a civil enforcement action brought under the citizen suit provisions of

7    Section 505 of the CWA, 33 U.S.C. § 1365.  This Court has subject matter

8    jurisdiction pursuant to 33 U.S.C. § 1365(a)(1).

9    9.     The Court also has federal question jurisdiction pursuant to 28 U.S.C. §

10   1331 because this action arises under the Clean Water Act and the Declaratory

11   Judgment Act, 28 U.S.C. § 2201, *et seq*.

12   10.     On March 11, 2015, Friends of Māhāʻulepu gave notice of the alleged

13   violations and its intent to file suit to Defendants, Defendants' registered agents,

14   the United States Environmental Protection Agency (EPA), EPA Region IX, and

15   the State of Hawaiʻi, Department of Health, as required by Section 505(a)(1) of the

16   CWA, 33 U.S.C. § 1365(a)(1) and the implementing regulations at 40 C.F.R. §

17   135.2.  A true and correct copy of Friends of Māhāʻulepu's notice letter is attached

18   hereto as Exhibit "A".

19   11.     More than 60 days have passed since Defendants were served with the

20   notice letter, and, upon information and belief, the violations complained of in the

COMPLAINT                                                  4

notice are continuing at this time or are reasonably likely to continue.  Neither the

EPA nor the State of Hawaiʻi has commenced or is diligently prosecuting a civil or

criminal action to redress the violations alleged in this complaint.  33 U.S.C. §

1365(b)(1)(B).

### VENUE

12.    Venue properly vests in the U.S. District Court for the District of Hawaiʻi

pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the

source of the alleged violations is located within this judicial district.

### PARTIES

13.    Plaintiff Friends of Māhāʻulepu, Inc., is a nonprofit corporation formed

under the laws of the State of Hawaiʻi.  Friends of Māhāʻulepu is a group of

concerned citizens who reside both within and outside of the Māhāʻulepu area and

the island of Kauaʻi.  Friends of Māhāʻulepu is dedicated to protecting and

preserving the natural beauty, land, and water of the Māhāʻulepu Valley and Island

of Kauaʻi, and to ensuring the health and safety of individuals and families who

reside, work, or visit spaces in the Māhāʻulepu Valley and Island of Kauaʼi.

Friends of Māhāʻulepu educates Māhāʻulepu -area residents and visitors to the

Island about possible health threats and risks posed by industrial activities and

pollution sources, and advocates on behalf of a clean and safe environment.

14.    Friends of Māhāʻulepu's members use and enjoy waterways in and around

Māhāʻulepu for cultural, recreational, and aesthetic purposes, including but not limited to:

    a.  sustenance fishing, limu and ʻopihi gathering, spring water collection and medicinal plant gathering;

    b.  wildlife care, preservation, and observation, including activities related to the preservation of the monk seal;

    c.  canoeing, surfing, kite surfing, stand-up paddleboarding, wading, swimming, snorkeling, and other outdoor recreation.

15.    Waterways used and enjoyed by Friends of Māhāʻulepu for the above activities include, but are not limited to, the Waiʻopili Stream, Pacific Ocean, and other hydrologically connected waters.  The Māhāʻulepu Valley also is historically and culturally significant for many of Friends of Māhāʻulepu's members, including Native Hawaiians and other longtime Kauaʻi residents.  Accordingly, Friends of Māhāʻulepu is interested in preserving the integrity of the Māhāʻulepu area, including its waterways, for current and future generations of native Hawaiians and for those persons for whom the Māhāʻulepu Valley holds particular cultural importance.

16.    Friends of Māhāʻulepu, Inc. is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

17.    Upon information and belief, Hawaii Dairy Farms, LLC, is a limited liability

1  company organized under the laws of the State of Delaware, with a mailing

2  address of 737 Bishop St., Ste. 2360, Honolulu, HI, 96813.  Hawaii Dairy Farms

3  plans to construct and is constructing a commercial dairy farm at the Proposed

4  Dairy Site, which will house up to 2,000 dairy cows at full operational capacity.

5  18.    Upon information and belief, Ulupono Initiative, LLC, is a limited liability

6  company organized under the laws of the State of Delaware, with a mailing

7  address of 999 Bishop St., Ste. 1202, Honolulu, HI, 96813.  Ulupono Initiative is

8  the managing member of Hawaiʻi Dairy Farms, LLC.

9  19.    Upon information and belief, Māhāʻulepu Farm, LLC is a limited liability

10  company organized under the laws of the State of Delaware, with a mailing

11  address of 3-1850 Kaumualii Hwy, Lihue, HI, 96766.  Māhāʻulepu Farm, LLC

12  owns properties bearing tax map key numbers: (4) 29-003-001, (4) 29-003-006,

13  and (4) 29-001-001, on which the Proposed Dairy is planned, and No. (4) 29-003-

14  005, adjacent to the Proposed Dairy Site.

15  20.    Hawaiʻi Dairy Farms, LLC is a "person" within the meaning of Section

16  502(5) of the CWA, 33 U.S.C. § 1362(5).

17  21.    Ulupono Initiative, LLC, is a "person" within the meaning of Section 502(5)

18  of the CWA, 33 U.S.C. § 1362(5).

19  22.    Māhāʻulepu Farm, LLC is a "person" within the meaning of Section 502(5)

20  of the CWA, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

23.    The stated objective of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a). Congressional intent was that the discharge of pollutants into the Nation's waters be eliminated by 1985.  *Id.*

24.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into the waters of the United States, unless the discharge complies with various other enumerated sections of the Act.  Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid NPDES permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p).

25.    Section 402 of the CWA establishes the NPDES program, and requires NPDES permit coverage for any stormwater discharge where "the Administrator or the State, as the case may be, determines that the stormwater discharge contributes to a violation of a water quality standard or is a significant contributor of pollutants to waters of the United States."  33 U.S.C. § 1342(p)(2)(E).  "Storm water" means storm water runoff, snow melt runoff, and surface runoff and drainage.  40 C.F.R. § 122.26(b)(13); HAR § 11-55-01.

26.    Section 402 of the CWA provides that "compliance with a permit issued pursuant to this section shall be deemed compliance…with section[] 1311…of this title."  33 U.S.C. § 1342(k).

27.     EPA has delegated the administration of the NPDES permit program in

Hawai'i to the Department of Health.  Specifically, the Clean Water Branch of the

Department of Health administers the NPDES permit program for discharges of

storm water associated with construction and construction support activities, and

requires that persons engaged in "construction activities, including, but not limited

to, clearing, grading, excavation, and construction activities that result in the

disturbance of one acre or more of total land area" obtain coverage under a NPDES

permit for their stormwater discharges.  HAR Ch. 11-55, Appendix C, Section 1.1

(NPDES General Permit Authorizing Discharges of Storm Water Associated with

Construction Activity, hereafter "Hawai'i General Storm Water Permit").

28.     The Hawai'i General Storm Water Permit also covers activities that disturb

less than one acre of total land area that is part of a larger common plan of

development or sale" if the larger common plan will ultimately disturb one acre or

more of total land area.  HAR Ch. 11-55, Appendix C, Section 1.1.

29.     "Disturbance of land" refers to the penetration, turning, or moving of soil or

resurfacing of pavement with exposure of the base course or the exposure of bare

soil or ground surface, including the land surface exposed by construction roads,

baseyards, staging areas, demolition, headquarters, and parking areas.  HAR Ch.

11-55, Appendix C, Section 1.4.  It also includes "grubbing," meaning the use of

equipment to knock down and push vegetation out of the way, typically uprooting

COMPLAINT                                                                                  9

1  vegetation and disturbing the ground surface.  *Id*.

2  30.     As an alternative or in addition to coverage under the Hawaiʻi General

3  Storm Water Permit Authorizing Discharge of Pollutants Associated with

4  Construction Activities, the Department of Health may require any permittee to

5  apply for coverage under an individual permit.  HAR Ch. 11-55, Appendix C,

6  Section 2.3.

7  31.     On December 6, 2013, the Department of Health, Clean Water Branch

8  readopted the Hawaiʻi General Storm Water Permit Authorizing Discharge of

9  Pollutants Associated with Construction Activities; it is valid for a period of five

10  years.

11  32.     At least 180 days prior to beginning construction activities that disturb one

12  or more acre of land (or less than one acre of total land area that is part of a larger

13  common plan of development), a discharger must submit a complete and accurate

14  Notice of Intent ("NOI") to be covered by the Hawaiʻi General Storm Water

15  Permit Authorizing Discharge of Pollutants Associated with Construction

16  Activities.  HAR Ch. 11-55-04(1).  A discharger must also develop and comply

17  with a Stormwater Pollution Prevention Plan.  HAR Ch. 11-55, Appendix C,

18  Sections 7-8.

19  33.     Section 505 of the CWA, 33 U.S.C. § 1365(a)(1), provides that citizens may

20  commence a citizen suit against "any person…who is alleged to be in violation

COMPLAINT                                                                                      10

of…an effluent standard or limitation under this chapter[.]"

**FACTS**

34.     Hawaiʻi Dairy Farms, LLC is in the process of constructing, and plans to operate, a commercial dairy at the Proposed Dairy Site in Māhāʻulepu, Kauaʻi. Hawaiʻi Dairy Farms will initially house at least 699 cows at the Site, scaling its operations up to 2,000 cows within a short time thereafter.

35.     The Proposed Dairy Site is on approximately 578 acres of land being leased from Defendant Māhāʻulepu Farm, LLC, to Defendant Hawaiʻi Dairy Farms, LLC.

36.     Upon information and belief, Hawaiʻi Dairy Farms and the other Defendants have engaged and continue to engage in construction and construction support activities at the Proposed Dairy Site, including, but not limited to: removal of Guinea grass and other "grubbing" activities to make the ground suitable for planting of non-native Kikuyu grass; installation of irrigation systems and associated piping, some of which may be underground; construction and in-ground installation of concrete watering troughs, including associated piping; digging of an effluent pond to store manure generated by the dairy herd; installation of monitoring wells; road improvements; and the staging of materials and equipment to accomplish the above and other activities (hereinafter "Construction Activities").

37.     Upon information and belief, Hawaiʻi Dairy Farms and the other Defendants

COMPLAINT                                                                                    11

1   began these construction activities sometime in early 2014 (at minimum, prior to

2   August, 2014 and potentially as early as January, 2014).

3   38.    Upon information and belief, Hawai'i Dairy Farms submitted a "Notice of

4   Intent" or NOI to the Department of Health on or about September 9, 2014,

5   seeking coverage under Hawai'i's General Storm Water Permit Authorizing

6   Discharge of Pollutants Associated with Construction Activities.  That NOI and

7   any corresponding application were not approved by the Department of Health,

8   and no permit was issued.

9   39.    Upon information and belief, Hawai'i Dairy Farms re-applied for coverage

10  under the General Storm Water Permit on or about May 7, 2015.  As of the date of

11  the filing of this complaint, Hawai'i Dairy Farms' May 7 application has not been

12  approved.

13  40.    Upon information and belief, Hawai'i Dairy Farms has not secured coverage

14  under the Hawai'i General Storm Water Permit Authorizing Discharge of

15  Pollutants Associated with Construction Activities or under an applicable

16  individual permit authorizing discharges associated with its construction activities.

17  41.    Upon information and belief, Hawai'i Dairy Farms has engaged and

18  continues to engage in Construction Activities at the Proposed Dairy Site.

19  42.    The Department of Health stated in a May 6, 2015 "Responsive Pretrial

20  Statement" in a state court matter that Hawai'i Dairy Farms "has begun grading

COMPLAINT                                                                                                12

and grubbing activities related to the construction of the dairy."  Specific dates, times, and locations of construction activities and expected pollutants associated with those activities are, or should be, in possession of the Defendants.  Pollutants may include, but not be limited to dirt, debris, sewage sludge from land applications, biological materials, rock, sand, or other materials.

43.     The Proposed Dairy Site is uncovered, and therefore exposed to precipitation.

44.     Upon information and belief, Defendants have discharged, are discharging, and will continue to discharge unpermitted stormwater runoff, containing Construction Pollutants, into waters of the United States.

45.     Upon information and belief, the sources of pollutants associated with the construction activities at the Proposed Dairy Site include, but are not limited to, roadways, raceways, concrete troughs, concrete and compacted limestone platforms for troughs, irrigation pipe installation, wells, and other items, machinery and construction materials stored on the Site, any vehicles driving on and off the Site, and others.

46.     Upon information and belief, the Construction Pollutants present in stormwater discharged from the facility include, but are not limited to, dirt, debris, sewage sludge from land applications, biological materials, rock, sand, or other materials.  These pollutants alter and degrade water quality, including such

1   parameters as turbidity, biochemical oxygen demand and pH.

2   47.     Upon information and belief, stormwater runoff from the Proposed Dairy

3   Site has been and continues to be conveyed to navigable waters by gravity via site

4   grading, slopes, and existing infrastructure, including through a series of ancient

5   agricultural ditches located on the Māhāʻulepu site (the "Māhāʻulepu Ditches"),

6   which eventually converge into the Waiʻopili Stream.  The Waiʻopili Stream flows

7   south and away from the Proposed Dairy Site, entering the Pacific Ocean just a

8   short distance away, near the Makauwahi Cave Reserve and Gillin's Beach.

9   48.     Hawaiʻi Dairy Farms is aware that site-disturbing activities have caused and

10   will continue to cause the discharge of pollutants as storm water to nearby surface

11   waters.  In its unapproved "Storm Water Prevention Plan," Defendant Hawaiʻi

12   Dairy Farms admits that its construction activities will discharge at least 5.74 cubic

13   feet per second into receiving waters during a 2-year, 1-hour precipitation event.

14   49.     Water quality in the Waiʻopili Stream exceeds applicable water quality

15   standards.  For example, water quality tests conducted at various locations in the

16   Waiʻopili Stream over the past year have shown levels of enterococcus well in

17   excess of the State's water quality standards of 35 colonies forming units

18   (geometric mean) and 130 colonies forming units (statistical threshold value) per

19   one hundred milliliters.  In 2015, the average concentration of enterococcus has

20   been approximately 14,000 colonies forming units per one hundred milliliters.

Recent tests have also shown high levels of turbidity.

50.     The Māhāʻulepu Ditches, the Waiʻopili Stream, and the Pacific Ocean are all "waters of the United States" as defined by 40 C.F.R. 122.2.

51.     Upon information and belief, stormwater runoff from the Proposed Dairy Site is not treated to remove any pollutants before discharging into waters of the United States.

## CLAIMS FOR RELIEF

## COUNT I

### Unauthorized Discharge of Construction Pollutants into Waters of the United States

52.     Friends of Māhāʻulepu incorporates the allegations contained in the above paragraphs as though fully set forth herein.

53.     Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants unless pursuant to the terms of a valid NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

54.     The Māhāʻulepu Ditches, the Waiʻopili Stream, and the Pacific Ocean are all "waters of the United States" subject to the CWA.

55.     Defendants did not and do not retain a NPDES permit authorizing their storm water discharges into such waterways from construction activity at the Proposed Dairy Site.

COMPLAINT                                                                                    15

56.     Since sometime prior to August, 2014, Defendants have discharged Construction Pollutants associated with their construction activities at the Proposed Dairy Site into waters of the United States, continue to discharge such pollutants and are likely to continue to do so in the future with each subsequent precipitation event.

57.     Each day that Defendants have discharged since the inception of ground disturbing activities and continue to discharge constitutes a separate and distinct violation of the CWA.

## COUNT II

**Failure to Obtain Permit Coverage for Storm Water Discharges**

58.     Friends of Māhāʾulepu incorporates the allegations contained in the above paragraphs as though fully set forth herein.

59.     Defendants are required to obtain permit coverage for construction activities at the Proposed Dairy Site under the Hawaiʻi General Storm Water Permit or an applicable individual NPDES permit pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

60.     As of the date of the filing of this complaint, Defendants have secured no such permit coverage for the construction activities at the Proposed Dairy Site.

61.    Each and every day on which Defendants have not had permit coverage for the length of time that construction activities at the Proposed Dairy Site have taken place constitutes a separate and distinct violation of the CWA.

## **RELIEF REQUESTED**

WHEREFORE, Friends of Māhāʻulepu respectfully requests that the Court enter a judgment:

A.    Declaring that Defendants have violated and continue to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for the unlawful discharges of pollutants stemming from unpermitted construction activities to waters of the United States;

B.    Declaring that Defendants' have violated and continue to be in violation of Section 402 of the Clean Water Act, 33 U.S.C. § 1342, for their failure to obtain coverage under the Hawaiʻi General Storm Water Permit Authorizing Discharge of Pollutants Associated with Construction Activity or an applicable individual permit for their discharges of polluted storm water associated with construction activities at the Proposed Dairy Site;

C.    Enjoining Defendants from discharging storm water containing construction related pollutants from the Proposed Dairy Site into waters of the United States except as authorized by and in compliance with the Hawaiʻi's General Storm

Water Permit Authorizing Discharge of Pollutants Associated with Construction Activity or an applicable individual permit;

D.      Ordering Defendants to comply fully and immediately with all applicable requirements of the Hawaiʻi General Storm Water Permit Authorizing Discharge of Pollutants Associated with Construction Activity;

E.      Ordering Defendants to pay civil penalties of $37,500 per day, per violation, for all violations of the Clean Water Act at the Proposed Dairy Site, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§19.1-19.4;

F.      Ordering Defendants to remediate any harm caused by Defendants' noncompliance with the Clean Water Act and to eliminate any potential for future harm;

G.      Ordering Defendants to pay Plaintiff's reasonable attorneys' fees, expert witness fees, and costs incurred in prosecuting this action pursuant to 33 U.S.C. § 1365(d); and

H.      Awarding any such other relief as the Court may deem just and proper.

/ / /

/ / /

/ / /

/ / /

COMPLAINT                                                                                                18

1   Dated: June 1, 2015.

2        Respectfully Submitted,

3   /s/ Charles M. Tebbutt         /s/ Tom Pierce
     CHARLES M. TEBBUTT, *pro hac vice*   TOM PIERCE, ESQ., 6983
4   *forthcoming*              PETER N. MARTIN, ESQ., 9705
     Law Offices of Charles M. Tebbutt,   Tom Pierce, Attorney at Law, LLLC
5   P.C.                   P.O. Box 798
     941 Lawrence St.           Makawao, HI 96768
6   Eugene, OR 97401         Telephone: 808-573-2428
     Telephone: 541-344-3505    Facsimile: 866-776-6645
7   Facsimile: 541-344-3516     E-mails: tom@mauilandlaw.com
     E-mail: charlie@tebbuttlaw.com   peter@mauilandlaw.com
8

9

10

11

12

13

14

15

16

17

18

19

20

COMPLAINT                                                                                     19