Linda M. B. Paul, Esq., 5354
LINDA M. B. PAUL ESQ. LLLC
815 Pahumele Pl.
Kailua, HI 96734
Telephone: 808-262-6859
Facsimile: 808-263-7728
E-mail: linpaul@aloha.net

Charles M. Tebbutt, *admitted pro hac vice*
Sarah A. Matsumoto, *admitted pro hac vice*
LAW OFFICES OF CHARLES M. TEBBUTT, PC
941 Lawrence St.
Eugene, OR 97401
Telephone: 541-344-3505
Facsimile: 541-344-3516
E-mail: charlie@tebbuttlaw.com
        sarah@tebbuttlaw.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FRIENDS OF MAHAʻULEPU, INC., a Hawaiʻi non-profit corporation,<br><br>                              Plaintiff,<br><br>      v.<br><br>HAWAIʻI DAIRY FARMS, LLC, a Delaware Limited Liability Company; ULUPONO INITIATIVE, LLC; a Delaware Limited Liability Company; MAHAʻULEPU FARM, LLC; a Delaware Limited Liability Company,<br><br>                              Defendants. | No. 1:15-cv-00205-LEK-KJM<br><br>[PROPOSED] CONSENT DECREE; EXHIBIT A; EXHIBIT B; EXHIBIT C; CERTIFICATE OF SERVICE |

[PROPOSED] CONSENT DECREE

WHEREAS, the Plaintiff, Friends of Maha'ulepu, Inc. ("Friends" or "Plaintiff"), filed a Complaint on June 1, 2015, against Hawaii Dairy Farms, LLC ("HDF"), Ulupono Initiative, LLC ("Ulupono"), and Mahauelpu Farm, LLC ("Mahaulepu") (collectively, "Defendants"), alleging violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "Clean Water Act" or "the Act"), seeking declaratory and injunctive relief, civil penalties, and attorneys and expert witness fees and costs; and

WHEREAS, Friends' claims and this Consent Decree relate to HDF's proposed commercial dairy operation, proposed for siting on approximately 557 acres in the Maha'ulepu Valley on the island of Kaua'i; and

WHEREAS, Defendants HDF and Ulupono disavow any liability, and Defendant Mahaulepu does not admit liability for any action undertaken by Defendants HDF or Ulupono; and

WHEREAS, Friends and Defendants (collectively, the "Parties,") agree that settlement of this matter and entry of this Consent Decree without additional litigation is the most appropriate means of resolving this action; and

WHEREAS, Friends and Defendants, after consultation with their respective counsel and without trial or final adjudication of the issues of fact or law with respect to Friends' claims or allegations, consent to entry of this Consent Decree in order to avoid the risks of litigation and to resolve the controversy between them;

NOW, THEREFORE, upon the consent of the Parties and upon consideration of the mutual promises herein contained, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

## GENERAL PROVISIONS

1.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over the subject matter of this action and the Parties pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365(a).  Venue is proper in this judicial district pursuant to Section 505(c) of the Act, 33 U.S.C. § 1365(c), because the activities giving rise to the allegations contained in the Complaint occur within the district of Hawai'i, and the Leased Premises (defined *infra*) is in the Maha'ulepu Valley on the island of Kaua'i.

2.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction for the purposes of issuing any further orders and directions as may be necessary and appropriate for the implementation or modification of this Consent Decree and enforcing compliance with or resolving disputes regarding the provisions of this Consent Decree.  The parties agree that Magistrate Judge Kenneth J. Mansfield shall take jurisdiction over the decisions concerning implementation, modification, or enforcement of this Consent Decree and such decision or action with respect to this Consent Decree, if appealable, shall be directly appealable to the Ninth Circuit Court of Appeals.

3.     <u>Reservation of Rights</u>.  In the event that any party violates the terms of this Consent Decree, any other party may seek redress from the Court and take any action authorized by law not inconsistent with this Consent Decree.

4.     <u>Severability</u>.  In the event that any part of this Consent Decree is deemed by a court of competent jurisdiction to be unlawful, void, or otherwise unenforceable, and if that part is severable from the remainder of the Consent Decree without frustrating the Decree's essential purpose, then the remaining parts of the Consent Decree shall remain valid, binding, and enforceable.

5.     <u>Counterparts</u>.  This Consent Decree may be executed in counterparts, and each counterpart shall be given full force and effect.

6.     <u>Effective Date</u>.  The effective date of this Consent Decree shall be the date upon which the Court enters in the civil docket a signed copy of this Consent Decree.

7.     <u>Review by United States</u>.  The Parties recognize that, pursuant to 33 U.S.C. 1365(c)(3), no consent judgment shall be entered in an action in which the United States is not a party prior to 45 days following the receipt of a copy of the proposed consent judgment by the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency ("EPA"). Upon execution of this Consent Decree by the Parties, Plaintiff shall serve copies of the executed Consent Decree upon the Administrator of the United States EPA,

[PROPOSED] CONSENT DECREE                    1958189v1 / 19206.0001                              3

the Citizen Suit Coordinator at the United States Department of Justice Attorney

General's office, and the Regional Administrator of EPA, Region 9, as required by

40 C.F.R. § 135.5.

8.    Integration.  This Consent Decree constitutes the final, complete, and

exclusive agreement and understanding of the Parties with respect to the settlement

embodied in this Consent Decree, and supersedes all prior agreements and

understandings among the Parties related to the subject matter of this Consent

Decree.

9.    Final Judgment.  Upon approval and entry of this Consent Decree by

this Court, this Consent Decree shall constitute a final, non-appealable judgment of

the Court under Rules 54 and 58 of the Federal Rules of Civil Procedure.

10.    Voluntary acceptance of terms.  Each Party acknowledges and

represents that it has relied on the legal advice of its attorneys, who are the

attorneys of its own choice, and that the terms of this Consent Decree have been

completely read and explained to it by its attorneys, and that the terms are fully

understood and voluntarily accepted.

## PARTIES

11.    Parties Bound.  This Consent Decree shall be binding upon Plaintiff,

Defendants, and their respective officers, agents, servants, employees, successors,

and assigns.  The descriptions of the Parties and the Parties' respective

representations herein are truthful.

     a.    Plaintiff Friends of Maha'ulepu is a 501(c)(3) nonprofit

corporation organized under the laws of the State of Hawai'i.  At the time of

entry of this Consent Decree, Friends' Board of Directors consists of Bridget

Hammerquist, Eileen Kechloian, and Jay Kechloian.  Friends shall inform its

members of the terms of this Consent Decree.

     b.    Defendant Hawaii Dairy Farms, LLC leases the Leased

Premises from Mahaulepu.

     c.    Defendant Ulupono Initiative, LLC is the managing member of

Hawaii Dairy Farms, LLC, and has sufficient assets and will be responsible

to pay any costs allocated to or attributable to Defendants pursuant to the

underlying case and the Consent Decree.

     d.    Defendant Mahaulepu Farm, LLC owns the land at Tax Map

Key numbers (4) 2-9-003-001, (4) 2-9-003-006, and (4) 29-001-001, and

leases a portion of such land (the "Leased Premises") to Defendant Hawaii

Dairy Farms, LLC ("HDF").

12.   <u>Defendants' cost and fees allocation</u>.  All costs and fees associated

with the undertakings agreed to in this Consent Decree that are allocated to or

attributable to the Defendants will solely be joint and several obligations of HDF and Ulupono.

## LAND AFFECTED

13.     Leased Premises.  This Consent Decree burdens the land identified above in Paragraph 11.d as the Leased Premises, and any improvements constructed thereon by Defendants.

14.     Exhibit A is a Google Earth map of the Leased Premises with a USGS topographical map overlay, which clearly and accurately shows the following information:

   a.     Ditches, streams, and water courses that flow through the Leased Premises,

   b.     Presently existing appurtenances to, on or under those ditches and streams, water courses, and

   c.     The location of the Waiopili Ditch, keyhole pond, staging area, Nursery, and each historic or concrete bridge.  The Parties have not agreed to the point of origin for the Waiopili ditch.  Each party reserves all rights to assert their respective positions as to the same, and neither party is bound by the depiction in this Exhibit.

15.     Exhibit B is a Google Earth map of the Leased Premises with a USGS topographical map overlay, which clearly and accurately depicts the water supply

pipelines—both underground and on the surface—that run through or under the Leased Premises.  Those facilities that take water from the regional pipelines to serve HDF are shown in orange and identified as "HDF Infrastructure."  The HDF Infrastructure begins at the valve, meter or turnout where water is delivered to facilities that serve HDF.

16.    Mahaulepu, HDF, and Ulupono also agree that the ditches, streams and surface water courses do not now and will not in the future supply water to HDF for use on the Leased Premises or provide any services to HDF, beyond passive drainage.  Mahaulepu owns and maintains all ditches on the Leased Premises.

## CONTINUED ACTIVITIES ON LEASED PREMISES

17.    The Parties agree that HDF may continue the following ongoing activities ("Allowed Activities") on the Leased Premises until the Consent Decree is terminated:

    a.    Mowing/trimming: use of an implement or machine to cut down grass or vegetation without purposefully uprooting the plant or disturbing the ground.

    b.    Irrigating: use of presently existing pipelines, infrastructure, and methods to supply water to presently existing grasses.  This includes any necessary repairs or replacement of presently existing irrigation pipelines or

infrastructure—specifically, HDF Infrastructure identified on Exhibit B—on or under the Leased Premises.

      c.    Temporary fencing for management of feral pigs:  The fencing used for pigs is 1 ½ inch round wooden stakes with sharp ends that are manually pounded into the ground to a depth of approximately 18 inches. The stakes are generally 50 feet apart.  Two electric wires are strung on the stakes.  Plastic stakes about 30 inches in length are attached to the electric wire and are pushed approximately four inches into the ground.  At least 7 days prior to installing a temporary pig fence, HDF shall provide written notice to Friends and to the Hawai'i Dept. of Health that identifies on Exhibit "A" or "B" the location where HDF desires to install the fence, and describes the approximate dimensions (length x width or area in square feet) of HDF's proposed fence.

## PROHIBITED ACTIVITIES ON LEASED PREMISES

18.    The Parties agree that, with the exception of those activities described herein, unless and until such time as the Consent Decree is terminated, and except as specified below in Paragraph 20, Defendants shall not engage in any of the following on the Leased Premises:

      a.    Digging: use of an implement, tool, or hands to break the Earth's surface and remove or displace soil,

b.      Excavating: to create a hole, cavity, tunnel or otherwise hollow out or level an area from the Earth's surface; similar to digging but often with use of heavy equipment,

c.      Harrowing: use of an agricultural implement with spikes, teeth, or disks drawn across the Earth's surface to break it up, uproot weeds, or otherwise churn and displace the soil,

d.      Grubbing: use of equipment to knock down and push vegetation out of the way, typically uprooting vegetation and disturbing the ground surface, as defined by HAR Ch. 11-55, Appendix C, Sec. 1.4,

e.      Any ditch maintenance involving dredging, redirecting of channels, or resizing the channels.

f.      Any other activity that constitutes "disturbance of land" as defined in HAR Ch. 11-55, Appendix C, Sec. 1.4.  "Disturbance of land" refers to the penetration, turning, or moving of soil or resurfacing of pavement with exposure of the base course or the exposure of bare soil or ground surface, including the land surface exposed by construction roads, baseyards, staging areas, demolition, headquarters, and parking areas.

19.    The Parties acknowledge that in the ordinary course of conducting the Allowed Activities, despite exercise of due care, incidental ground disturbance may occur.  The Parties agree that such incidental and unintentional disturbance

shall not violate this Consent Decree, provided that such incidental ground disturbance (for example, hitting a dirt mound or ant hill while mowing, testing soil using probes) occurred in connection with the Defendants' good faith efforts to engage only in the Allowed Activities.

20.     The restriction on HDF and/or Ulupono's activities, however, does not restrict Mahaulepu from continuing to maintain pipelines, ditches, and drainage canals so long as their work does not include working on the HDF Infrastructure that serves the Leased Premises in the normal course of its operations.  The locations of the Mahaulepu ditches and drainage canals that serve properties outside the Leased Premises are depicted on Exhibit A, and the pipelines are depicted on Exhibit B.  Each exhibit may be updated from time to time in accordance with the modification procedures outlined in the Consent Decree.

21.     Mahaulepu certifies that it shall not provide any construction or ground-disturbing services to HDF or Ulupono on the Leased Premises without appropriate notice to Friends and the Monitor and providing access to the Monitor (as described herein) to observe the construction or ground-disturbing activity. Any notice required by this section shall be made in writing consistent with Paragraphs 37 and 38 and shall describe, in detail, the conditions necessitating the planned construction or ground-disturbing services (the "Work"), the Work that Mahaulepu plans to perform, identification of the area of the Leased Premises in

which the Work will be performed, the Best Management Practices that will be implemented during the Work, and the date and time the Mahaulepu plans to perform the Work.  Mahaulepu shall provide the notice described in Paragraph 21 at least seven (7) days in advance of its preferred date and time for performing the Work.  If the Monitor is unable to attend and observe the Work on Mahaulepu's preferred date, Mahaulepu shall work with the Monitor to schedule the Work for a time during which the Monitor is available to attend and observe.

## INSPECTION AND PROPERTY ACCESS

22.    The Parties acknowledge that site maintenance may occasionally require unusual ground-disturbing activities, for instance repair of underground irrigation facilities.  In addition, construction or ground-disturbing activities may be mandated or requested by a regulatory body or government agency.  To address that situation, the parties shall designate a Monitor to observe all ground disturbing or construction work that must be performed by HDF or Ulupono, or others on their behalf, on the Leased Premises (the "Monitor").

a.    Pursuant to the Parties' Stipulation (Dkt. 274) and to the Court's Order addressing the same (Dkt. 275), AECOS, Inc. shall serve as the Monitor.  The contact person for AECOS shall be Jacqueline Mello, (808) 234-7770, SMello@AECOS.com.

b.     The Monitor shall only access the Leased Premises by a route approved by Mahaulepu and HDF, and shall proceed directly from the approved entrance to the job trailer to meet HDF personnel.  The Monitor shall be escorted by HDF personnel throughout the construction or ground-disturbing work.  Upon completion of the work, the Monitor shall be escorted back to the main road.  No person, including any member of the public or member of Friends, other than the Monitor shall be permitted access to observe the work.  Within ten (10) days of the conclusion of any observation, the Monitor shall report all findings and provide any documents or photographs collected during the observation of work directly to each party.

c.     Any report created by the Monitor following an inspection of the Leased Premises shall include the following:

i.     The date, start time, and end time of the inspection;

ii.     A narrative description of the acts observed, including which person or person performed the observed acts, the location on the Leased Premises that the acts were performed, the approximate size (in square feet or length x width) of the area where the ground was disturbed, and the materials and equipment used (including technical specifications and brand names, if known);

iii.　　Photographs and, if applicable, video footage of the observed actions, including photographs documenting conditions before, during, and after the observed actions;

iv.　　Copies of any documents provided to the Monitor prior to, during, or following any inspection, including any correspondence between the Monitor and any Defendant;

v.　　A description of weather conditions prior to, during, and immediately following the inspection.  The Monitor shall obtain precipitation data from the closest NOAA weather station for the 7-day period immediately preceding each inspection.

vi.　　The monitor will also record the identification of all persons present, their respective titles and affiliations and contact information.  The monitor shall keep the names and contact information confidential unless it is required for court proceedings in connection with enforcement of the Consent Decree.

23.　　If HDF and/or Ulupono plans maintenance or a response to a governmental agency that requires ground disturbance other than as agreed herein, then HDF and/or Ulupono shall notify the Monitor, Friends, and Mahaulepu at least seven (7) days in advance or, in the case of an emergency repair, as much time in advance as is reasonably possible.  The purpose of the advanced notice is to

schedule the HDF and/or Ulupono work to allow the Monitor and Mahaulepu the

opportunity to observe the ground-disturbing work before such work commences

and the BMPs employed to prevent discharges of pollutants.

24.    The Parties acknowledge that the Allowed Activities inherently

involve allowing specific, necessary ground-disturbing work under the Consent

Decree.  The primary purpose of requiring the Monitor is to have access and the

ability to observe the ground-disturbing activities to verify that HDF, Ulupono,

and/or Mahaulepu have taken reasonable care to prevent a discharge of pollutants

as a result of work for the benefit of HDF that is allowed by this Consent Decree.

25.    Friends shall be bound by the laws governing private property, and

Defendants shall be protected by the laws governing private property.  Friends

acknowledges and agrees that the Consent Decree does not authorize or permit any

unauthorized or unlawful entry onto the Leased Premises.

26.    Friends shall not authorize the use of drones over the Leased Premises

and/or land owned by Mahaulepu by any of its members, attorneys, or agents.

Friends agrees that any helicopter flights it conducts over the Mahaulepu Valley

shall conform to FAA altitude requirements for commercial flights.  Friends shall

not authorize the posting of signs by any of its members, attorneys, or agents on

the Leased Premises or lands owned by Mahaulepu without the express written

consent of HDF or Mahaulepu.

## BEST MANAGEMENT PRACTICES

27.     To address Friends' concerns about site conditions (which HDF disputes), HDF and Ulupono agree to install or implement supplemental Best Management Practices ("BMPs") on the Leased Premises as follows:

a.      Straw wattles or silt fence along down gradient edges of any exposed earth at the "keyhole pond",

b.      Straw wattles or silt fence along down gradient areas of equipment staging area,

c.      If the Nursery area has not revegetated, straw wattles or silt fence along down gradient edges of the Nursery,

d.      Straw wattles or silt fence along both sides and both ends of every historic or concrete bridge (4 sets per bridge),

e.      Straw wattles or silt fence in areas where pivot tracks have created divots or channels that may convey water.  Alternatively, HDF may fill in any pivot tracks, identifying the material to be used therein, to ensure they do not convey water so long as this is done in a manner consistent with recognized irrigation management BMPs.  Specifically, HDF may utilize a manually applied mix of local limestone and sand to allow for vegetation to grow in the tracks.

28.     Defendants shall provide written notice to Friends and to the Monitor of the completion of BMP installation and implementation.  The Monitor shall undertake one inspection of the BMPs to ensure that the BMPs are installed as required by this paragraph, including the taking of photographs, within 10 days of notification and completion of the listed BMPs.

29.     If Friends notifies HDF of any deficiencies in the installation of the BMPs as required by this Consent Decree, then the parties shall meet and confer about such alleged deficiencies.  HDF shall have a reasonable time to correct any deficiencies, and the Monitor shall re-inspect to confirm that the corrections have been satisfactorily completed.

## SUPPLEMENTAL ENVIRONMENTAL PROJECTS

30.     Within forty-five (45) days from the date this Consent Decree is entered by the Court, Defendants shall provide $125,000 in funding for one or more environmental projects in the Maha'ulepu/Po'ipu/Koloa area that are mutually approved by the parties (the "SEP" or "SEPs").  Pursuant to the Parties' Stipulation (Dkt. 274) and the Court's Order addressing the same (Dkt. 275), the Makauwahi Cave Reserve ("MCR") shall receive and administer the SEP funds for the "Stream Bank and Endangered Species Protection Project."  *See* Exhibit C (Letter from MCR describing SEP).  Defendants shall provide written notice to Friends at the time that SEP funds are transmitted.

31.     Payment of the SEP funds shall be deemed enforceable until satisfied in full, even if the Consent Decree has otherwise terminated (see Paragraph 47).

## ATTORNEYS' FEES AND COSTS

32.     Friends may submit a fee petition to the Court within 60 days of entry of this Consent Decree.

33.     Any attorneys' fees and costs awarded shall solely be joint and several obligations of HDF and Ulupono.

34.     Ulupono certifies that it has sufficient assets and shall pay attorneys' fees and costs if awarded to Friends by the Court.

## NONDISPARAGEMENT

35.     The Parties shall not disparage each other and their officers, members, employees, and agents in any medium, including, without limitation, print or electronic form.  Disparagement in this situation is intended to mean making false statements that are intended to castigate or discredit the reputation of a party.

36.     This agreement does not constitute a waiver of First Amendment rights to engage in truthful protected speech concerning the subject matter of this litigation or activities related to the proposed project to operate a dairy in the Maha'ulepu Valley.

## NOTICES

37.     Unless otherwise specified herein, whenever notice is required to be sent by one Party to any other under the terms of this Consent Decree, it shall be directed to the individuals specified below, unless prior notice of change of address or recipient has been given to all Parties.  The designated notice recipients listed below agree to exchange designated e-mail addresses to be used in accordance with this Section no later than three (3) business days after entry of this Consent Decree, unless those e-mail addresses are listed herein.  Any Party may change either the notice recipient or the address for providing notices by serving a written notice of the change on all other Parties.

38.     Unless otherwise specified herein, notice is considered sufficient under this Consent Decree if it is provided in writing and served electronically by e-mail.  Notices sent pursuant to this section shall be deemed served upon electronic transmission, unless otherwise provided in this Consent Decree or by mutual written agreement of the Parties.

     a.     Notice recipients – Plaintiff: Charles M. Tebbutt, Law Offices of Charles M. Tebbutt, PC, charlie@tebbuttlaw.com; Sarah A. Matsumoto, Law Offices of Charles M. Tebbutt, PC, sarah@tebbuttlaw.com; Linda M. B. Paul, Law Offices of Linda M. B. Paul Esq. LLLC, linpaul@aloha.net.

     b.     Notice recipients – Defendant Hawaii Dairy Farms, LLC: Christopher L. Campbell, Baker Manock & Jensen, PC,

ccampbell@bakermanock.com; Dirk B. Paloutzian, Baker Manock &

Jensen, PC, dpaloutzian@bakermanock.com; Patricia J. McHenry, Cades

Schutte LLP, pmchenry@cades.com.

     c.    Notice recipients – Defendant Ulupono Initiative, LLC:

Christopher L. Campbell, Baker Manock & Jensen, PC,

ccampbell@bakermanock.com; Dirk B. Paloutzian, Baker Manock &

Jensen, PC, dpaloutzian@bakermanock.com; Patricia J. McHenry, Cades

Schutte LLP, pmchenry@cades.com.

     d.    Notice recipients – Defendant Mahaulepu Farm, LLC:

Christopher L. Campbell, Baker Manock & Jensen, PC,

ccampbell@bakermanock.com; Dirk B. Paloutzian, Baker Manock &

Jensen, PC, dpaloutzian@bakermanock.com; Patricia J. McHenry, Cades

Schutte LLP, pmchenry@cades.com.

## DISPUTE RESOLUTION

39.    The Dispute Resolution procedures of this Section shall be the

exclusive mechanism for the Parties to raise and resolve disputes arising under or

in connection with this Consent Decree.

40.    If any dispute arises regarding implementation, interpretation, or

compliance with this Consent Decree, any Party may initiate the dispute resolution

process by serving written notice of a request for dispute resolution on any other

Party.  Upon receipt of a dispute resolution notice, the Parties shall first attempt to resolve the dispute through a meeting or telephone conference.  If no resolution is reached within thirty (30) calendar days of the date that notice of a request for dispute resolution is served, then the Parties may resolve the dispute by filing motions with the Court.  If, however, one party contends that they are being disparaged by another party, the party asserting it has been disparaged may file for a Temporary restraining order at any time to promptly address the disparagement.

41.    The Parties agree to comply with any written agreement reached as a result of negotiations conducted during the thirty (30) day period of the dispute resolution process.

## MODIFICATION

42.    The Consent Decree shall not be modified by any prior oral or written agreement, representation, or understanding.  The Court may, however, consider the context of the settlement discussions and term sheet signed by the Parties in implementing, modifying, or enforcing any terms of the Consent Decree consistent with the dispute resolutions provision herein.

43.    Modification of any non-material term of this Consent Decree after its entry may be made without approval of the Court, but must be in writing and agreed to by the Parties.

44.     Modification of any material term of this Consent Decree after its entry shall be effective only upon approval by the Court.  Prior to requesting Court approval of a proposed modification, any party seeking modification must first make a good faith effort to reach agreement with the other Parties on such modification.  After undertaking good faith efforts to reach agreement, should no agreement be reached, any party may petition the Court for a modification of this Consent Decree.  Any ruling by the Court on a petition for modification may be appealed by a Party in accordance with relevant law and rules.

45.     If the Court should decline to approve this Consent Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to the entry of this Consent Decree.

## TERMINATION

46.     Except for payment of SEP funds, the Consent Decree shall automatically terminate and be of no further force or effect without further action by the Parties upon the earlier to occur of: (i) issuance of an NPDES Construction Stormwater permit for construction of HDF's facility, or (ii) termination or expiration of HDF's interest in the Leased Premises.

///

///

BY OUR SIGNATURES BELOW, WE HEREBY CONSENT TO THE ENTRY
OF THIS CONSENT DECREE:

Date:                                          Date:

_4-5- 2017_____          _____

Signature:                                     Signature:

_Bridget Hammerquist_____          _____

Name & title:                                  Name & title:

_Bridget Hammerquist, President_          _____

*On behalf of Friends of Maha'ulepu Inc.*   *On behalf of Hawaii Dairy Farms, LLC*


Date:                                          Date:

_____          _____

Signature:                                     Signature:

_____          _____

Name & title:                                  Name & title:

_____          _____

*On behalf of Ulupono Initiative LLC*        *On behalf of Mahaulepu Farm LLC*


[PROPOSED] CONSENT DECREE            1958189v1 / 19206.0001                22

Case 1:15-cv-00205-KJM   Document 289   Filed 05/26/17   Page 24 of 26   PageID.31497
Case 1:15-cv-00205-LEK-KJM   Document 276   Filed 04/05/17   Page 23 of 24   PageID #:
31374

BY OUR SIGNATURES BELOW, WE HEREBY CONSENT TO THE ENTRY
OF THIS CONSENT DECREE:

Date:

Date:  *04/06/17*

Signature:

Signature:  *E Kyl Datto*

Name & title:

Name & title:  *E. Kyle Datta*
*Manager*

*On behalf of Friends of Maha'ulepu Inc.*

*On behalf of Hawaii Dairy Farms, LLC*

Date:  *4/6/2017*

Date:

Signature:

Signature:

Name & title:  *Murray R. Clay*
*Managing Partner*

Name & title:

*On behalf of Ulupono Initiative LLC*

*On behalf of Mahaulepu Farm LLC*

[PROPOSED] CONSENT DECREE          1958189v1 / 19206.0001          22

BY OUR SIGNATURES BELOW, WE HEREBY CONSENT TO THE ENTRY OF THIS CONSENT DECREE:

Date: _____

Signature: _____

Name & title: _____

*On behalf of Friends of Maha'ulepu Inc.*

Date: _____

Signature: _____

Name & title: _____

*On behalf of Ulupono Initiative LLC*

Date: _____

Signature: _____

Name & title: _____

*On behalf of Hawaii Dairy Farms, LLC*

Date: 4/6/17

Signature: *Warren H. Haruki*

Name & title: Warren H. Haruki President & CEO

*On behalf of Mahaulepu Farm LLC*

[PROPOSED] CONSENT DECREE          1958189v1 / 19206.0001          22

IT IS SO APPROVED AND ORDERED.

Dated this ____ day of _____, 2017.

<br>

_____
Hon. Leslie E. Kobayashi
United States District Judge